UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL DEFILIPPO. | No. 3:21-cr-128 (VAB) |

RULING AND ORDER ON MOTION TO DISMISS

Michael DeFilippo ("Mr. DeFilippo") has been charged in a multi-count indictment with one count of conspiracy to violate rights in violation of 18 U.S.C. § 241 ("Count One"), four counts of identity theft in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(2)(B), and eleven counts of fraudulent registration in violation of 52 U.S.C. § 20511(2)(A). Indictment, ECF No. 1 ("Indictment").

On March 8, 2023, Mr. DeFilippo filed a motion to dismiss Count One. Mot. to Dismiss Count One, ECF No. 36 ("Mot.").

For the following reasons, Mr. DeFilippo's motion to dismiss Count One is **GRANTED.**

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

     A. **Factual Allegations**

Mr. DeFilippo, allegedly a Bridgeport City Council member from 2018 through July 2021, Indictment ¶ 1, allegedly represented the 133rd District, which is near the Sacred Heart University ("Sacred Heart") campus. *Id.*

Mr. DeFilippo also allegedly owned rental properties that he allegedly leased to students attending Sacred Heart. *Id.* ¶ 2.

In 2017, Mr. DeFilippo allegedly ran for Bridgeport City Council (the "City Council") in

1

the 133rd District as a Democrat. *Id.* ¶ 4.

When registering to vote in Connecticut, voters allegedly have the option to enroll in a political party. *Id.* ¶ 12. Only those voters who enroll in a political party are allegedly eligible to vote in that party's primary election. *Id.*

Additionally, in order to vote by absentee ballot, voters must allegedly submit an application that claims one of six qualifying reasons the voter is allegedly "unable to appear at the polling place" during voting hours. *Id.* ¶¶ 15–16.

If a voter qualifies to vote absentee, the Bridgeport Town Clerk's Office allegedly sends the voter absentee balloting documents, including instructions for how the voter can submit their vote. *Id.* ¶ 19.

On April 4, 2018, Mr. DeFilippo allegedly stole three of his student-tenants' absentee ballot documents for the April 10, 2018 City Council Primary. *Id.* ¶ 30. Mr. DeFilippo allegedly filled out the three absentee ballots, voting for himself, and then allegedly falsified the tenants' signatures, sealed the ballots in envelopes, and mailed the ballot package to the Bridgeport Town Clerk's Office. *Id.*

On June 22, 2018, Mr. DeFilippo allegedly stole an absentee ballot package for the June 26, 2018 general election for City Council. *Id.* ¶ 31. Mr. DeFilippo allegedly filled out the absentee ballot, voting for himself. *Id.* He allegedly then signed, sealed, and mailed the absentee ballot to the Bridgeport Town Clerk's Office. *Id.*

The purpose of Mr. DeFilippo's alleged conspiracy was "to win . . . [the] election in the primaries and general election . . . , and to conceal the conspiracy from detection by election and law enforcement authorities." *Id.* ¶ 22.

Mr. DeFilippo was elected to the City Council in the June 26, 2018 election. *Id.* ¶ 9.

Mr. DeFilippo was allegedly re-elected to the City Council in November 2019. *Id.* ¶ 10.

**B.  Procedural History**

On July 27, 2021, the grand jury returned a multi-count indictment against Mr. DeFilippo. Indictment.

On July 28, 2021, Mr. DeFilippo appeared before Magistrate Judge Spector and orally moved for release on bond. Min. Entry, ECF No. 5.

On July 28, 2021, the Court granted the motion for release from custody. *Id.*

On November 17, 2021, the Court held a status conference. Min. Entry, ECF No. 18.

On November 17, 2021, the Court granted a motion to continue the trial date and ordered counsel to file a proposed motion schedule. *Id.*; Order, ECF No. 19; Order, ECF No. 22.

On November 23, 2021, the parties submitted a proposed scheduling order. Joint Mot. for Order re: Entry of Scheduling Order, ECF No. 23.

On November 24, 2021, the Court adopted the parties' proposed scheduling order. Order, ECF No. 24.

On August 4, 2022, the Court held a scheduling conference. Min. Entry, ECF No. 26.

On August 4, 2022, the Court continued the trial date. Order, ECF No. 27.

On August 26, 2022, the parties submitted a motion for an amended scheduling order. Mot. for Order re: Entry of Am. Scheduling Order, ECF No. 29.

On August 27, 2022, the Court granted the motion and adopted the proposed amended scheduling order. Order, ECF No. 30.

On November 9, 2022, Mr. DeFilippo moved to continue jury selection. Mot. to Continue Jury Selection and Pretrial Deadlines, ECF No. 31.

On November 10, 2022, the Court granted the order and adopted the proposed amended

scheduling order. Order, ECF No. 32.

On March 8, 2023, Mr. DeFilippo filed a motion to dismiss Count One. Mot.

On March 9, 2023, the Court set a briefing schedule for the motion. Order, ECF No. 37.

On March 17, 2023, the Government filed proposed voir dire, proposed jury instructions, and a proposed verdict form. Proposed Jury Instructions, ECF No. 38; Proposed Voir Dire, ECF No. 39; Proposed Verdict Form, ECF No. 40.

On March 24, 2023, the Government filed a motion *in limine* for opening statements. Mot. *in Limine* for Opening Statements, ECF No. 43.

On March 27, 2023, Mr. DeFilippo filed a motion to continue jury selection. Mot. to Continue Jury Selection, ECF No. 44.

On March 27, 2023, the Government filed a motion for extension of time to respond to the motion to dismiss Count One. Mot. for Extension of Time, ECF No. 45.

On March 28, 2023, the Court granted the motion to continue jury selection, Order, ECF No. 46, and the motion for extension of time, Order, ECF No. 48.

On May 1, 2023, the Government filed a memorandum in opposition to Mr. DeFilippo's motion to dismiss Count One. Gov't Opp'n to Def.'s Mot. to Dismiss Count One, ECF No. 49 ("Opp'n").

## II.    STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b) permits defendants to raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *United States v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "[I]n ruling on a motion to dismiss, a court views the indictment as a whole and assumes its factual allegations to be true." *United States v. Litvak*, No. 3:13-CR-19 JCH, 2013 WL 5740891, at *2

(D. Conn. Oct. 21, 2013) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).

"[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute," *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012), and thus a motion to dismiss may be decided "solely upon issues of law," *United States v. Was*, 684 F. Supp. 350, 351 (D. Conn. 1988), *aff'd*, 869 F.2d 34 (2d Cir. 1989). A court must dismiss an indictment that fails to state an offense. *See United States v. Pirro*, 212 F.3d 86, 92–93 (2d Cir. 2000); Fed. R. Crim. P. 12(b)(3)(B)(v). "But when such a[n argument] raises dispositive evidentiary questions, a district court must defer resolving those questions until trial." *Sampson*, 898 F.3d at 279 (internal quotation marks omitted).

## III.   DISCUSSION

18 U.S.C. § 241 provides, in relevant part,

> [i]f two or more persons conspire to injure, oppress, threaten, or intimidate and person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same . . . they shall be fined under this title or imprisoned not more than ten years . . . .

"[S]ince the gravamen of the offense under § 241 is conspiracy, the prosecution must show that the offender acted with a specific intent to interfere with the federal rights in question." *Anderson v. United States*, 417 U.S. 211, 223 (1974).

Mr. DeFilippo moves to dismiss Count One, arguing that § 241 does not extend to alleged criminal conspiracies in local elections. *See* Mot. at 5 (arguing that the federal Constitution does not confer a general right to vote in local elections).

In response, the Government offers two theories for including alleged criminal conspiracies to impede individuals' right to vote in local elections within the scope of § 241.

First, the Government argues that the Supreme Court has identified a fundamental right to vote in all elections such that a conspiracy aimed at federal, state, or local elections would fall within the scope of § 241. Opp'n at 6–9. Second, the Government argues that the Fourteenth Amendment secures the right vote in local elections under the "one person, one vote" doctrine. *Id.* at 9–17.

The Court will address each theory in turn.

### A.  The General Scope of § 241

"Section 241 creates no substantive rights, but prohibits interference with rights established by the Federal Constitution or laws and by decision interpreting them." *United States v. Kozminski*, 487 U.S. 931, 941 (1988) (citations omitted). "In unambiguous language," § 241 "protects any right or privilege secured . . . by the Constitution." *United States v. Classic*, 313 U.S. 299, 322 (1941) (citations and quotation marks omitted). The Supreme Court has "made clear . . . that when § 241 speaks of 'any right or privilege secured . . . by the Constitution or laws of the United States,' it means precisely that." *United States v. Guest*, 383 U.S. 745, 753 (1966).

For a statute written as broadly as § 241, however, the constitutional right at issue must be "specific either by the express terms of the Constitution . . . or by decisions interpreting them," so as to comply with the fair warning requirement of the Due Process Clause. *United States v. Lanier*, 520 U.S. 259, 267 (1997) (citing *Screws v. United States*, 325 U.S. 91, 104 (1945)); *see also Kozminski*, 487 U.S. at 944 (stating that courts must view the scope of the relevant amendment "through the narrow window that is appropriate in applying § 241").

Mr. DeFilippo argues that, to the extent that it exists, the right to vote in local elections is not a right secured by the Constitution or federal law. Mot. at 5. More specifically, Mr. DeFilippo argues that "[s]tate elections are and always have been the sole province of the states"

6

and therefore, the states, "not the federal government, can and regularly do limit or condition the suffrage of their citizens." *Id.* at 6. Mr. DeFilippo contends that the only federal limits to states' control over their own elections can be found in various constitutional amendments such as the Fifteenth, Nineteenth, and Twenty-Sixth Amendments. *Id.* In Mr. DeFilippo's view, these amendments do not confer a general right to vote in local elections, but instead they simply "shield individual citizens from state sponsored discrimination." *Id.*

Mr. DeFilippo next argues that, to the extent a general right to vote exists in the federal Constitution, it is a right to vote in federal elections, primary and general. *Id.* at 6–7. Mr. DeFilippo emphasizes that "the Supreme Court," when it discuss the right to vote in state or local elections, "has generally opined that there is no such right arising under federal law." *Id.* at 7. Mr. DeFilippo relies on *United States v. Cruikshank*, in which the Supreme Court reversed a conspiracy conviction for interference with the right to vote, in part, because "the right of suffrage is not a necessary attribute of national citizenship; but that exemption from discrimination in the exercise of that right on account of race is." *Id.* at 8. Likewise, Mr. DeFilippo contends that the Second Circuit has already addressed this issue in *United States v. Kantor*, where the court reversed a conspiracy conviction because there was no evidence that any voter who's right to vote was interfered with had voted for a federal candidate. *Id.* at 11–12.

In response, the Government argues that the Supreme Court has identified a fundamental right to vote in all elections, whether they are federal, state, local, general, or primary elections. Opp'n at 6–7. More specifically, the Government relies on cases such as *Reynolds v. Sims* and *Wesberry v. Sanders* for the proposition that "[t]he right to vote freely for a candidate of one's choice is the essence of a democratic society, and any restrictions on that right strike at the heart of a representative government." *Id.* at 7. In the Government's view, because the Supreme Court

has stated that "the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections," and that "[t]he right of voters at the primary to have their votes counted is . . . a right or privilege secured by the Constitution," § 241 can be applied to a local primary election. *Id.* at 7–8 (first quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); and then quoting *Classic*, 313 U.S. at 325).

The Government argues that the Court "need not necessarily rely on a specific passage in the Constitution guaranteeing the right to vote in state elections in order to validate the Indictment." *Id.* at 8. The Government notes that the Supreme Court has expressly declined to determine whether § 241 applies to state and local elections, but contends that the Fourth, Seventh, and Eighth Circuits have since found that § 241 applies to election fraud conspiracies in non-federal elections. *Id.* at 8–9.[1]

The Court disagrees.

In *Anderson*, the Supreme Court explicitly declined to address whether § 241 applied to a conspiracy that only impacted state and local elections, 417 U.S. at 228 ("This case is therefore an inappropriate vehicle for us to decide whether a conspiracy to cast false votes for candidates for state or local office, as opposed to candidates for federal office, is unlawful under § 241, and we intimate no views on that question."),[2] and therefore, the Supreme Court has not clearly stated that there is a general constitutionally protected right to vote in state and local elections

---

[1] The Government also does not suggest that such a right exists in any federal statute.

[2] Notably, in dissent, Justice Douglas, joined by Justice Brennan, argued that § 241, in fact, does not include conspiracies to interfere with state and local elections because "Congress did not intend to reach local election malfeasance where there was no evidence of racial bias because it did not believe that it had that power" and Congress "expressed unwillingness to interfere with the right of States to control their own elections where there was no racial discrimination." *Id.* at 237–38 (Douglas, J. dissenting).

outside of the Fourteenth Amendment.[3]

Similarly, while the Government argues that three circuit courts have applied § 241 to non-federal elections, none of those courts found that there was a general constitutional right to vote in state and local elections.

First, in *United States v. Wadena*, 152 F.3d 831, 842–43 (8th Cir. 1998), the Eighth Circuit considered the defendants' challenge to their convictions under § 241. The defendants argued that § 241 did not cover their conduct because the charged conspiracy related to election fraud in a tribal election. *Id.* The Eighth Circuit found that § 241 covered the defendants' conduct, not because there is a general federal constitutional right to vote in tribal elections, but instead because the Indian Civil Rights Act's ("ICRA") legislative history made clear that Congress intended the ICRA to cover election fraud. *Id.* at 843–47. In other words, the Eighth Circuit found that § 241 applied because the defendants conspired to deny a right or privilege secured by the laws of the United States, not by the Constitution. *Id.* ("We thus conclude that [the defendants] may be prosecuted in federal court under § 241 because such conspiracy encompassed a violation of the ICRA, a law of the United States.").

Second, in *United States v. Olinger*, 759 F.2d 1293, 1295 (7th Cir. 1985), the Seventh Circuit considered the defendants' challenge to their convictions under § 241 for various acts of

---

[3] To be clear, there is a right to vote in state and local elections located in the Substantive Due Process Clause of the Fourteenth Amendment, *see Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) (stating that "[w]ithout question, courts have found [substantive] due process violations in voting cases before" and listing examples, such as malapportioned voting districts, discrimination of voters by class, geographic area, or political affiliation, and "other willful conduct that undermines the organic processes by which candidates are elected"); *see also Pereira v. Town of N. Hempstead*, No. 22-CV-06231 (HG), 2023 WL 4532595, at *1, 9 (E.D.N.Y. July 13, 2023) (applying the *Shannon* Substantive Due Process framework to the plaintiffs' claim that the Town's wholly local district map violated the plaintiffs' fundamental right to vote), however, even if the Government had put forth this theory of liability, it would still need to show state action. As discussed below, the allegations of state action are insufficient, and under the Substantive Due Process Clause, the Government would be required to prove that the state action was intentional. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005) (stating that the Substantive Due Process Clause requires "intentional state conduct directed at impairing a citizen's right to vote").

voter fraud related to a local election. The Seventh Circuit upheld the defendants' convictions because there was sufficient evidence that the conspiracy, while it was intended to impact a local election, included casting false votes for a federal election on the same ballot. *Id.* at 1298 ("As in *Anderson*, the prosecution in the case before us proved a conspiracy to cast false votes for all offices on the ballot, including that of member of the United States House of Representatives. Thus, the Government presented evidence sufficient for the jury to find a violation of 18 U.S.C. § 241."). This case, therefore, simply stands for the proposition that a § 241 charge is proper where there is evidence that the conspiracy impacted a federal election.[4]

Finally, the Fourth Circuit has suggested that it would likely allow a § 241 charge related to state and local elections to go forward as a conspiracy to violate the Fourteenth Amendment. In *United States v. Anderson*, 481 F.2d 685, 689 (4th Cir. 1973), *aff'd*, 417 U.S. 211, the Fourth Circuit found that § 241 included conspiracies to impede the right to vote in state and local elections. The court reasoned that voting "is a civil right of the highest order" and "it is clear that, where states provide for the election of officers, that right, as we have indicated, is protected against dilution involving state action under the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 699. Therefore, the Fourth Circuit did not find a general federal right to vote in state and local elections, but instead relied on provisions of the Fourteenth Amendment, which require state action to support a § 241 conspiracy charge. *Id.* at 700.

The Supreme Court, as noted above, affirmed the Fourth Circuit, but declined to directly address whether § 241 applied to conspiracies that only impacted state and local elections.

---

[4] In its brief, the Government relies on *United States v. Howard*, 774 F.2d 838, 841 (7th Cir. 1985). The Court has only addressed *Olinger* because *Howard* denies the defendants' challenge because the Seventh Circuit had "recently rejected [the same] arguments under essentially identical circumstance in *United States v. Olinger*." *Howard*, 774 F.2d at 841. In *Howard*, the election that was the subject of the charged conspiracy "included a federal contest for the office of the United States Representative" as well as state and local offices. *Id.* at 840. Therefore, the above analysis applies equally to *Howard*.

*Anderson*, 417 U.S. at 228. Thereafter, the Fourth Circuit, in a case that did not involve a § 241 prosecution, stated that it found "nothing in what the Supreme Court said to cause us to depart from the views we have previously expressed." *United States v. Stollings*, 501 F.2d 954, 955 (4th Cir. 1974). Therefore, while the Fourth Circuit would likely allow a § 241 prosecution to go forward based on a Fourteenth Amendment violation when state action is involved, it has not stated, as the Government suggests, that there is otherwise a general constitutional right to vote in state and local elections.

Conversely, the Second Circuit has directly addressed this question, albeit not recently. In *United States v. Kantor*, 78 F.2d 710, 710–11 (2d Cir. 1935), the defendants were charged, under § 241's predecessor, with a conspiracy to obstruct an election that included federal, as well as state and local, candidates. The Second Circuit reversed the conviction because "[t]here was no evidence that any qualified voter, who did not vote because of alleged interference, intended to vote for a candidate for federal office." *Id.* at 711.

Therefore, the Government has not provided—and this Court has not independently identified—any case law that would suggest there is a constitutional right to vote in state and local elections outside of the Fourteenth Amendment.

Even if the broad language cited in the Government's opposition, such as that in *Reynolds v. Sims*, suggests that § 241 could be applied to alleged criminal conspiracies in state and local elections, "[d]ue process requires that a criminal statute 'give fair warning of the conduct that it makes a crime.'" *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 350–51 (1964)).

Fair warning in this context has "three related manifestations." First, "the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in

11

terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanier*, 520 U.S. at 266 (citations and internal quotation marks omitted). Second, "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id.* (citations omitted). Third, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* (citations omitted).

A § 241 charge is proper, "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (quoting *Lanier*, 520 U.S. at 269). "One whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *United States v. Venturella*, 391 F.3d 120, 134 (2d Cir. 2004) (citations and quotation marks omitted).

Here, Mr. DeFilippo lacks the constitutionally required notice that his conduct violated the law. As discussed above, the Supreme Court has explicitly declined to find that § 241 extends beyond conspiracies aimed at federal elections and circuit courts have similarly declined to find that § 241 extends to conspiracies solely aimed at impeding state and local elections, at least outside of the context of the Fourteenth Amendment. Moreover, the only Second Circuit case to directly address this issue found that conduct that is purely directed at state and local elections cannot sustain a § 241 conviction. *See Kantor*, 78 F.2d at 711. Therefore, the Government cannot bring this charge under the theory that there is a general federal constitutional right to vote in state and local elections.

Accordingly, the Court will consider the Government's alternate theory under the

Fourteenth Amendment.

**B.  The Specific Scope of Fourteenth Amendment Rights Protected Under**

      **Section 241**

"Fourteenth Amendment Rights" are included "within the compass of 18 U.S.C. § 241."

*Guest*, 383 U.S. at 753–54 ("And the rights under the Equal Protection Clause . . . have been so

firmly and precisely established by a consistent line of decisions in this Court, that the lack of

specification of these rights in the language of § 241 itself can raise no serious constitutional

question on the ground of vagueness and indefiniteness." (citations omitted)).

The Court will first address whether Mr. DeFilippo's alleged conduct falls within the

Fourteenth Amendment. Then, the Court will consider whether there are sufficient allegations of

state action.

**1.  Rights Under the Equal Protection Clause**

The Fourteenth Amendment's Equal Protection Clause states that "[n]o State shall . . .

deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND.

XIV, § 1. "[T]he Equal Protection Clause guarantees the opportunity for equal participation by

all voters in the election of state legislators" because "the achieving of fair and effective

representation for all citizens is concededly the basic aim of legislative apportionment."

*Reynolds*, 377 U.S. at 565–66. Thus, the Equal Protection Clause guarantees that state elections

comply with the principle of "one person, one vote." *Evenwel v. Abbott*, 578 U.S. 54, 59 (2016).

The Government argues that Mr. DeFilippo allegedly "sought to deny equal protection of

the law to voters in the 133rd District by causing the State of Connecticut to devalue their votes

and impose an election result affected by his fraud." Opp'n at 16. In the Government's view, the

alleged conspiracy "had the object of interfering with voters' Fourteenth Amendment right to vote and have their votes counted." *Id.*

The Court agrees.

Section 241 has been applied to alleged conspiracies to submit fraudulent votes or to prevent voters from voting based on the theory that this violates the one person, one vote doctrine. *See, e.g.*, *Classic*, 313 U.S. at 310 (finding a conspiracy that involved "alter[ing] eighty-three ballots case for one candidate and fourteen cast for another, marking and counting them as votes for a third candidate" was properly prosecuted because the conspiracy "deprived qualified voters of . . . equal protection of the laws guaranteed by the Fourteenth Amendment"); *see also Anderson*, 481 F.2d at 699 (finding that § 241 included conspiracies to impede the right to vote in state and local elections because voting "is a civil right of the highest order" and "it is clear that, where states provide for the election of officers, that right, as we have indicated, is protected against dilution involving state action under the Equal Protection Clause of the Fourteenth Amendment").

Moreover, the one person, one vote doctrine has been applied to state and local elections, such that this right has been "firmly and precisely established by a consistent line of decisions." *Guest*, 383 U.S. at 754 (citations omitted); *see also Reynolds*, 377 U.S. at 565–66 ("Since the achieving of fair and effective representation for all citizens is concededly the basic aim of legislative apportionment, we conclude that the Equal Protection Clause guarantees the opportunity for equal participation by all voters in the election of state legislators."); *Avery v. Midland County*, 390 U.S. 474, 480 (1968) (applying one person one vote to a local election and stating that "when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must

14

insure that those qualified to vote have the right to an equally effective voice in the election process"). Therefore, Mr. DeFilippo's alleged conduct arguably falls within the scope of the Fourteenth Amendment.

Accordingly, the Court will consider whether there are sufficient allegations of state action.

### 2.     State Action

"[R]ights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority." *Guest*, 383 U.S. at 755; *see also Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014) ("Because the United States Constitution regulates only the Government, not private parties, a litigant . . . who alleges that her constitutional rights have been violated must first establish that the challenged conduct constitutes state action." (alterations, emphasis, and internal quotation marks omitted)), *cert. denied*, 575 U.S. 984 (2015). "The Equal Protection Clause reaches the exercise of state power however manifested, whether exercised directly or through subdivisions of the State." *Avery*, 390 U.S. at 479–80.

To show state action, the Government must establish both that 1) the defendant's "alleged constitutional deprivation was caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and 2) "that the party charged with the deprivation is a person who may fairly be said to be a state actor." *Grogan*, at 263–64 (emphasis omitted).

The Government argues that there are sufficient allegations of state action because Mr. DeFilippo's alleged "conspiracy . . . caused the State of Connecticut, the City of Bridgeport, the Bridgeport Town Clerk, and the Bridgeport Registrar to act as at least peripheral participants in

the deprivation of voters' rights or as one of several co-operative forces leading to the constitutional violation." Opp'n at 13. In the Government's view, there is a "low threshold for state action . . . to trigger application of the Fourteenth Amendment." *Id.* at 11, 15–16. The Government argues that "a defendant can violate § 241 by causing innocent state actors to take action that infringes a constitutional right." *Id.* at 12.

The Court disagrees.

In *Guest*, a case that was decided well before the contemporary state action doctrine took shape, the Supreme Court stated that "[i]n a variety of situations the Court has found state action of a nature sufficient to create rights under the Equal Protection Clause even though the participation of the State was peripheral, or its action was only one of several co-operative forces leading to the constitutional violation." 383 U.S. at 755–56 (collecting cases). While the Supreme Court declined to set specific guidelines as to the "threshold level that state action must attain" under the Equal Protection Clause, it indicated that state action varies from "no more than a co-operative private and state action" to "active connivance by agents of the State" in the charged conspiracy. *Id.* at 756–57. The Supreme Court, however, suggested that if there were "no co-operative action of that kind by officials of the State," the charge would be dismissed. *Id.* at 757.

Since *Guest*, the Supreme Court has developed a more specific test for state action, *see Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982) (stating that conduct must be "fairly attributable to the State" to constitute state action and therefore, "the deprivation must be caused by the exercise of some right or privilege created by the State" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor"), but, even under the low threshold established in *Guest*, the Government has not alleged a sufficient factual basis to find

16

the requisite state action.

Specifically, the Government alleges that voter registration forms are prepared by the Connecticut Secretary of the State's Office, Indictment ¶ 13, absentee ballot requests are submitted to the Bridgeport Town Clerk's Office, *id.* ¶ 15, absentee ballot documents are prepared by the Secretary of State's Office and sent to voters by the Bridgeport Town Clerk's Office, *id.* ¶ 19, and completed absentee ballots are returned to the Town Clerk's Office, *id.* ¶ 20. Mr. DeFilippo allegedly submitted fraudulent voter registration and absentee ballot documents to the Bridgeport Town Clerk's Office. *Id.* ¶¶ 21, 24–25, 30–31.

Notably absent from the indictment, however, are any allegations that any state officials cooperated or acted in concert with Mr. DeFilippo. To the contrary, the alleged purpose of Mr. DeFilippo's conspiracy was "to conceal the conspiracy from detection by election and law enforcement authorities." *Id.* ¶ 22.

Finally, contrary to the Government's assertion, *United States v. Wiseman*, 445 F.2d 792 (2d Cir. 1971), does not stand for the proposition that "even private actors can 'cause' state action that triggers application of the Fourteenth Amendment" by simply "causing criminal conduct by innocent state actors." Opp'n at 13. Instead, *Wiseman* stands for the much more limited—and, even so, still contested[5]—proposition that private actors who perform service of process are state actors because they are performing a public function. *See Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 24 n.10 (2d Cir. 1979) ("In [*Wiseman*] (a criminal case under 18 U.S.C. § 242), we relied entirely on the public function theory to find state action 'under color of law.'"); *see also Grogan*, 768 F.3d at 264–65 ("Under the public

---

[5] *See, e.g.*, *Sanchez v. Abderrahman*, No. 10-cv-3641, 2012 WL 1077842, at *7 (E.D.N.Y. Mar. 30, 2012) (noting that "at least one court" has "questioned the continuing vitality of *Wiseman*" in light of *Lugar*).

function test, [s]tate action may be found in situations where an activity that traditionally has been the exclusive, or near exclusive, function of the State has been contracted out to a private entity." (alteration in original) (citations and quotation marks omitted)).

Here, there are no allegations from which this Court could conclude that Mr. DeFilippo was performing a public function. And, as discussed above, there are insufficient allegations that any state actors were sufficiently involved in the conspiracy to find state action.[6] Therefore, the indictment is insufficient as a matter of law.

Accordingly, Mr. DeFilippo's motion to dismiss Count One will be granted.

## IV.   CONCLUSION

For the foregoing reasons, Mr. DeFilippo's motion to dismiss Count One is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of August, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[6] To the extent the Government suggests that, by "corrupting" Connecticut's state constitution and laws, Opp'n at 14–15, Mr. DeFilippo's conduct falls within the state action doctrine, this is not so. *See Lugar*, 457 U.S. at 940 ("[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State."). *Cf. Moore v. Harper*, 600 U.S. ----, 143 S. Ct. 2065, 2089 (2023) ("State courts retain the authority to apply state constitutional restraints when legislatures act under the power conferred upon them by the Elections Clause.").